James McMICHAEL, Appellant,

v.

Gerald D. SHIRCLIFFE et al., Appellees.

Court of Appeals of Kentucky.

April 20, 1962.

As Modified on Denial of Rehearing
March 15, 1963.

Frank E. Haddad, Jr., Hector E. Rose, Robert Hubbard, Louisville, for appellant.

J. Walter Clements, Louisville, for appellees.

CULLEN, Commissioner.

James McMichael brought action against Gerald and Donald Shircliffe for personal injuries and property damage sustained in a collision between the McMichael and Shircliffe automobiles at the intersection of First Street and College Street in Louisville. At the close of the plaintiff's evidence the court directed a verdict for the defendants, on the theory that the evidence showed the plaintiff to have been contributorily negligent as a matter of law. McMichael has appealed from the judgment entered upon the verdict, contending that the evidence presented jury issues as to contributory negligence and last clear chance.

First Street is a one-way southbound boulevard with four traffic lanes. For convenience we shall designate these lanes, beginning from the east, as Nos. 1, 2, 3 and 4. College Street, a two-way east and west street with two traffic lanes, crosses First Street at right angles. There are arterial stop signs on College Street at the intersection. The Shircliffe car was going south on First Street, and the McMichael car was going west on College Street. The Mc-Michael car stopped at the stop sign and then proceeded into the intersection. It was struck by the Shircliffe car in lane No. 2. The Shircliffe car remained standing practically at the point of collision but the Mc-Michael car was knocked towards the southwest corner of the intersection and tipped over on its left side.

McMichael's testimony was that when he stopped at the stop sign he saw a city bus stopped in lane No. 4, at the northwest corner of the intersection, picking up passengers. He saw the Shircliffe car some 100 feet north of the intersection, in lane No. 4. He assumed that the car would stop behind the bus and he proceeded into the intersection. When he had gone but a few feet the Shircliffe car swung around the bus at high speed, crossed clear over to the east side of the street, and ran into his car, he having come to a stop with the front of his car just entering lane No. 2.

The testimony of the driver of the Shircliffe car (taken as on cross-examination) was that at all times he was driving in lane No. 2; when he was 100 feet from the intersection he saw the McMichael car stop; when he reached a point 60 feet from the intersection the McMichael car started into the intersection; as quickly as he could react to this situation he applied his brakes but was unable to stop before hitting the McMichael car, although he skidded about one car length before the collision; with the McMichael car crossing in front of him it would have been impossible to avoid a collision by turning his car.

Excepting his estimate of the extremely high rate of speed the Shircliffe car was traveling when it swung around the bus (70 m. p. h.) there is nothing in the circumstances of the accident to render Mc-Michael's testimony unbelievable.

Under KRS 189.330(4) it was McMichael's duty to yield the right of way to the Shircliffe car if it was approaching so closely as to constitute an immediate hazard. A finding of contributory negligence on his part requires a finding that he violated this duty. In order to find such a violation as a matter of law the evidence must be such that reasonable minds could reach no conclusion other than that the Shircliffe car was approaching so closely as to constitute an immediate hazard.

We have an unusual factor in this case in that the superior street is a four-lane, one-way thoroughfare. It appears to us that in determining the question of closeness of an approaching vehicle on such a street as it relates to creation of a hazard, consideration must be given to the lane in which the vehicle is traveling. If the driver of the crossing vehicle may reasonably assume that the approaching vehicle will remain within the confines of the lane in which it is traveling, his hazard depends upon how close the approaching vehicle may be expected to be when he enters its lane. Obviously, if at the moment the crossing vehicle enters into the intersection the approaching vehicle is close to the intersection in the farthermost lane, there will be no hazard because the approaching vehicle will pass through the intersection before the crossing vehicle reaches that lane. On the other hand, if the approaching vehicle is some distance from the intersection in the farthermost lane, the driver of the crossing vehicle must recognize the danger of its reaching the intersection at the same time he enters its lane.

From a practical standpoint it would seem that in the case of a multiple-lane, one-way street each lane should be considered a street in the sense that the

driver of the crossing vehicle, *before he enters the intersection,* is entitled to gauge the hazard according to what lane the approaching vehicle is in. It does not mean that after he enters the intersection he shall make a separate gauging of the hazard as he approaches each individual lane. This view of course assumes there is a reasonable basis for the driver of the crossing vehicle to depend upon the approaching vehicle's staying in its lane.

It is our opinion that reasonable minds might conclude that in the light of common experience in city traffic an assumption reasonably might be made that an approaching vehicle on a multiple-lane, one-way street will stay in its lane in nearing an intersection, in the absence of some condition of traffic that would indicate a reason for a movement into another lane. Here the presence of the stopped bus in lane No. 4 might have indicated a reason for the Shircliffe car to move into lane No. 3 but certainly not to move clear over into lane No. 2, which McMichael said the car did.

In KRS 189.340(6) (a) it is provided that on a multiple-lane roadway a vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from that lane until the driver has first ascertained that the movement can be made with safety. It appears that this statute, in speaking of making the movement with safety, has reference to the safety of other traffic moving in the same direction. It does not seem to be applicable to the question of whether a vehicle on a superior street, in moving from one lane to another, may lose its right of way over cross traffic on an intersecting street. However, we think the statute, in stating policy that a vehicle on a multiple-lane street shall as nearly as may be practicable stay in one lane, furnishes a basis upon which a jury could find that a reasonable man, in undertaking to drive across an intersection, might assume that an approaching vehicle would stay in its lane.

It is our opinion that a jury would have been entitled to believe McMichael's testimony, and if so, to find that he was not negligent in entering the intersection because the Shircliffe car was not in such proximity, had it remained in lane No. 4 or in lane No. 3, as to constitute an immediate hazard.

On the other hand, if the jury should believe Shircliffe's testimony, it would be required to find McMichael contributorily negligent, because if, as Shircliffe testified, his car was only 100 feet away, in lane No. 2, when McMichael *stopped* at the stop sign, he was bound to be so close, when McMichael reached lane No. 2, as to constitute an immediate hazard as a matter of law.

In Frozen Food Marketers v. Feisstreitzer, Ky., 335 S.W.2d 896, where a car headed east attempted to cross a two-lane, one-way street when a car was approaching from the south 100 feet away in the west lane, this Court held that the approaching car could not be said as a matter of law to be so close as to constitute an immediate hazard. We pointed out that cross-traffic at city intersections normally moves with relatively small margins of time and distance. But in that case the approaching car was in the nearest lane, while here the car, according to Shircliffe's testimony, was in the second lane. The time required to move from a stopped position across one lane is such that we think a car 100 feet away in the second lane must be considered hazardously close as a matter of law.

The appellant maintains that even if he be held contributorily negligent upon an acceptance of Shircliffe's version of the accident he would be entitled to a jury finding in his favor under a last clear chance instruction. However, the cases he relies upon predate recent decisions of this Court in which the application of the last clear chance doctrine has been restricted. In Desgrosiellier v. Vaughn, Ky., 320 S.W.2d 304, it was held that the doctrine should not be applied in the ordinary intersection accident case. This view was adhered to in

Smith v. Crenshaw, Ky., 344 S.W.2d 393, and in Seamon v. Bolton, Ky., 351 S.W.2d 51.

 According to Shircliffe's testimony he was only 60 feet from the intersection, traveling 30 miles per hour, when the McMichael car commenced to move into the intersection. At that speed his normal stopping distance would have been 80 feet. His chance of avoiding a collision by swerving to the right or left was not clear because he could not determine with any certainty whether the McMichael car would stop or would continue across his path. McMichael had a chance to avoid a collision by stopping his car before he entered into the second lane. Under these circumstances Shircliffe cannot be said to have had a last clear chance.

The judgment is reversed with directions to grant a new trial at which, if the evidence be substantially the same, the case shall be submitted to the jury under instructions in conformity with this opinion.